UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-CV-10052-JLK

ROY O'BRYAN and BEVERLY O'BRYAN,

    Plaintiff,

v.

FORD MOTOR COMPANY,

    Defendant.
_____/

## FINAL SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Defendant Ford Motor Company's Amended Motion for Final Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment (DE 190), filed March 7, 2014. The Court has been fully briefed on the matter.[1] For the reasons cited herein, the Court finds that Defendant's Motion for Summary Judgment should be granted.

### I. INTRODUCTION

This is an action in strict product liability and negligence against Ford Motor Company ("Defendant") claiming an allegedly defective speed control deactivation switch in Roy and Beverly O'Bryan's ("Plaintiffs") 2000 Ford Expedition ("the Expedition") was the cause of a December 6, 2008 residential fire at 221 Harbor Drive in Key Largo, Florida ("subject fire"), which completely destroyed Plaintiffs' home.

Defendants seek summary judgment on the basis that Plaintiffs cannot prove a defect in the Expedition, or the cause of the subject fire. In their Response (DE 192), Plaintiffs argue that they have provided sufficient evidence of a product defect to preclude summary judgment. Defendant argues that Plaintiff failed to prove that a defect existed in the Expedition at the time of the fire and, therefore Plaintiffs lack the evidentiary support necessary to maintain their

---

[1] Plaintiffs filed their Response to Defendant's Motion for Summary Judgment (DE 192) on March 17, 2014, and Defendant subsequently filed a Reply (DE 194) on March 24, 2014.

actions in strict product liability and negligence. All experts—even the Plaintiffs' own expert—agree that the cause of the fire is undetermined. Alternatively, Plaintiffs contend they are entitled to application of the *Cassisi* inference[2] to establish that a defect existed, and that Defendant's Motion for Summary Judgment should therefore be denied.

## II. BACKGROUND

This matter arises from a fire occurring on December 6, 2008 at a residence located at 221 Harbor Drive in Key Largo, Florida. (DE 189 ¶ 1). Plaintiffs' 2000 Ford Expedition—purchased new in 1999—was parked under Plaintiffs' home at 1:00 p.m. on December 5, 2008. (*Id.* at ¶ 7). The fire occurred while the Expedition was off and parked, at approximately 6:00 a.m. on December 6, 2008. (*Id.* at ¶ 1). The vehicle was eight years old and had an estimated 104,000 miles on it. (*Id.* at ¶ 2). Since initially filing this lawsuit in April 2010, Plaintiffs have maintained that the fire was caused by an allegedly defective speed control deactivation switch manufactured by Texas Instruments and subject to Safety Recall 05S28 ("TI SCDS") contained in the subject 2000 Ford Expedition. (*Id.* at ¶ 9). The undisputed evidence shows that Plaintiffs' only expert,[3] Dennis Kerr, mistakenly assumed the TI SCDS was installed in the Expedition at the time of the fire. (*Id.* at ¶¶ 36, 37). The recalled switch had been removed from the Expedition at the time the recall repair work was performed on May 3, 2005, more than three and a half years before the fire. (*Id.* at ¶ 28). Plaintiffs cannot establish their chief defect allegation that the TI SCDS was the cause of the subject fire, a position they had maintained for over three years.

On October 28, 2005, the United States Judicial Panel on Multidistrict Litigation ("J.P.M.L") created MDL-1718, styled *In Re: Ford Motor Co. Speed Control Deactivation*

---

[2] *See* Cassisi v. Maytag Co., 396 So. 2d 1140 (Fla. 1st DCA 1981) (suggesting that, in certain circumstances, the defect and cause may be inferred from evidence that the product malfunctioned during normal operation).

[3] On January 23, 2014, the Court entered an Order granting Ford's Motion to Exclude Testimony on Plaintiff's Expert, David Reiter because his opinions were "unreliable, based on speculation and unsupported by the evidence." *See* DE 186.

2

*Switch Products Liability Litigation*, which was assigned to the Honorable Bernard A. Friedman of the United States District Court for the Eastern District of Michigan (the "transferee court") for coordinated and consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 398 F. Supp. 2d 1365 (Jud. Pan. Mult. Lit. 2005). The J.P.M.L. found that the actions that formed the beginnings of MDL-1718 "share[d] factual questions regarding whether certain Ford vehicles were equipped with defective or defectively-installed speed control deactivation switches" and that "[c]entralization under Section 1407 [was] necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings . . . and conserve the resources of the parties, their counsel and the judiciary." *Id.* at 1366–67. At the time this case was originally filed, upwards of 140 additional actions had been transferred to MDL-1718 for coordinated and consolidated pretrial proceedings. *See* Stipulation of Pretrial Record on Remand, DE #27-1 (Conditional Transfer Order (CDO-58) transferring the underlying action in this case to MDL-1718).

On April 27, 2010, Plaintiffs filed a diversity action in the United States District Court for the Southern District of Texas.[4] *See* DE 1. The six-count complaint (the "original complaint") named Defendant, as well as three other defendants no longer parties to this action,[5] and alleged facts and causes of action similar to those in MDL-1718. Three of the six counts were specifically against Ford (strict liability, negligence, and negligent misrepresentation), an additional negligence count was aimed at all defendants generally, a count for breach of the implied warranty of merchantability was aimed at an unspecified defendant, and an additional count for strict liability was aimed at one of the remaining defendants. *Id.* at 9–18. The original complaint also purported to "adopt by reference the Third Amended Complaint in [MDL-1718], and any subsequent amendments thereto." *Id.* at 9. The Third Amended Complaint was

---

[4] The O'Bryans were two of twelve co-plaintiffs from seven different states. The O'Bryans are the only plaintiffs before this Court, the other co-plaintiffs have either settled or been severed or dismissed out prior to this case being transferred to the Southern District of Florida on May 24, 2012.

[5] Texas Instruments Incorporated, E.I. Dupont Nemours and Company, and Sensata Technology, Inc. were dropped as defendants by stipulation in MDL-1718, leaving Ford Motor Company as the sole defendant in this action.

subsequently replaced by the Fourth Amended Master Complaint ("FAMC"), which is now the operative pleading in this case. The day after they filed this action, Plaintiffs moved to stay the case pending its transfer to MDL-1718. *See* DE 3. This Motion was granted (DE 4), and this case was transferred to MDL-1718 on June 8, 2010.

For over two years, the Plaintiffs participated in common discovery while in MDL-1718, alleging that the TI SCDS switch was defective and caused the fire. On or about April 5, 2012, upon completion of common discovery in MDL-1718, this action was remanded to the Southern District of Texas and then transferred to the Southern District of Florida for case specific discovery and resolution.

Before this Court, Plaintiffs' initial disclosures suggested that, in addition to the remaining claims in the FAMC, Plaintiffs would also seek emotional distress damages. On March 12, 2013, this Court granted Defendant's Motion for Clarification finding the Plaintiffs had failed to adequately plead a claim for infliction of emotional distress under Florida law (DE 65), and reaffirmed that the only remaining claims against the Defendant are strict liability and negligence. Finally, the Court struck two of Plaintiff's three expert witnesses. David Reiter, Plaintiffs' only forensic engineer expert, was struck because his opinions were unreliable based on speculation and unsupported by the evidence. (DE 186). The Court also struck Plaintiffs real estate value expert, Amber Sirica. (DE 185). Plaintiffs only remaining expert, Dennis Kerr, is a non-engineer fire cause and origin expert who is not qualified to offer any opinion regarding an alleged design or manufacturing defect in the Expedition.

### III. LEGAL STANDARD

On a motion for summary judgment, the moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *Allen v. Tyson Foods,*

4

*Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact").

The Supreme Court has recognized two grounds of summary judgment. *See Vela v. Sears Holding Corporation, Inc.*, 2011 U.S. Dist. LEXIS 115895, *6 (S.D. Fla., Nov. 23, 2010). The first is where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 322. The second is where, after adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23. This case falls within this second ground in that Plaintiffs have failed to produce sufficient admissible evidence of a defect in the Expedition, an essential element of their claim.

## IV. DISCUSSION

The Plaintiffs' claims before this Court are for strict product liability and negligence. It is well-settled that Plaintiffs have the burden of proof as to the elements of their claims. *See Vela v. Sears Holding Corporation, Inc., et al.*, 10-CV-24011-KING, *7 (Fl. S.D. 2011). Both of these claims hinge on whether the product was defective and whether the defect was the proximate cause of the Plaintiffs' injuries.[6] Upon careful review of the pleadings and the record, the Court

---

[6] *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1295 (11th Cir. 2005) (requiring a plaintiff "prove by a preponderance of the evidence that his injury was proximately caused by the manufacturer's breach of its duty to produce a product reasonably safe for use"); *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 84 (Fla. 1976) (requiring a plaintiff prove five elements in a strict product liability case, including the existence of a defective condition in the product and the condition's proximate cause of the injury suffered); *Vela v. Sears Holding Corp.*, 2011 U.S. Dist.

5

finds that the Plaintiffs, after four years of litigation, have failed to produce sufficient admissible evidence of a defect in the Expedition and have also failed to prove causation. Plaintiffs' own expert witness testified that the cause of the fire is undetermined,[7] and insufficient admissible evidence of the existence of a defect is fatal to Plaintiffs' claims. *See, e.g., Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1295–96 (11th Cir. 2005) (affirming summary judgment on claims of strict liability and negligence where the plaintiffs offered no admissible evidence of the existence of a defect). Accordingly, the Court finds summary judgment in favor of the Defendant is appropriate. *See Coltex*, 477 U.S. at 322–23.

### A. Plaintiffs Cannot Prove Any Defect in the Expedition

For claims in negligence and strict liability, a plaintiff must first prove that the product was defective. *See Diversified Products Corp. v. Faxon*, 514 So. 2d 1161 (Fla. 1st DCA 1987); *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 87 (Fla. 1976). In general, proof of a defect determines a breach of duty under a negligence theory and the presence of an unreasonably dangerous condition under a strict liability theory. A plaintiff will fail to state a *prima facie* case or meet the burden of proof if they are unable to prove the defect. *Adkins v. Economy Engineering Co.*, 495 So. 2d 247 (Fla. 2d DCA 1986); *North Am. Catamaran Racing v. McCollister*, 480 So. 2d 669 (Fla. 5th DCA 1985); *Builders Shoring & Scaf. Equip., Inc. v. Schmidt*, 411 So. 2d 1004, 1006 (Fla. 5th DCA 1982), *cert. denied*, 419 So. 2d 1200 (Fla.). To prove this element, the plaintiff must prove either that the manufacturing defect existed when the product left the manufacturer's possession, or that the manufacturer failed to warn against the danger of a product characteristic or failed to prove adequate directions for its safe use. *West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80, 87 (Fla. 1976).

---

LEXIS 115895, *9, 2011 WL 4737056 (S.D. Fla., Oct. 6, 2011) ("In essence, in the context of products liability, a plaintiff asserting negligence cannot prove breach without proving defect."); *see also* Norton v. Snapper Power Equip., Div. of Fuqua Inds., Inc., 806 F.2d 1545, 1548 (11th Cir. 1987) (following *West v. Caterpillar Tractor Company*, 336 So.2d 80, 84 (Fla. 1976)).

[7] *See* DE 189, ¶ 39.

6

The Eleventh Circuit stressed the importance of admissible evidence on the existence of a product defect in *Rink v. Cheminova, Inc.*, where the plaintiffs had brought claims in both strict product liability and negligence against the manufacturer of an allegedly defective pesticide that caused the plaintiffs' injuries. *Rink*, 400 F. 3d at 1288–89. The only evidence produced by the plaintiffs of the alleged defective characteristics of the pesticide would have been the proffered testimony of their proposed expert witness, but the district court excluded Plaintiff's expert, finding that the witness did not satisfy *Daubert*.[8] *Id.* at 1289-94. Without the expert testimony on the alleged defect, the plaintiffs could not meet their burden and the district court granted summary judgment to the defendants. *Id.* at 1294. The Eleventh Circuit upheld summary judgment, noting that the Plaintiff could not prove causation without expert testimony. *Id.* at 1288. The Eleventh Circuit determined that, within the context of claims under theories of strict liability and negligence, before a plaintiff can present evidence of causation, the plaintiff must first prove that the product was defective. *Id.* at 1295.

As in *Rink*, this Court finds that the absence of evidence of a defect in the record warrants summary judgment in favor of the Defendant. Plaintiffs only offer their own lay testimony and that of a neighbor as to events occurring after the start of the fire as well as the testimony of Dennis Kerr, a fire cause and origin expert, who is not qualified to determine whether a defect did in fact exist within the Expedition.[9] The Plaintiffs did not provide any physical evidence as to the defect. It is undisputed that the switch had been removed more than three years before the fire. All five of the parties' experts have opined that the cause of the fire was "undetermined."

Although Plaintiffs' witness, Dennis Kerr, offered his theory on what may have been the cause of the fire and the existence of a defect in light of the circumstances, Plaintiffs have

---

[8] Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 S. Ct. 2786 (1993) ("[T]he requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.").

[9] After learning at his deposition that the TI SCDS was not installed in the Expedition at the time of the fire, Kerr opined that the fire was probably caused by an unidentified electrical failure in the engine compartment. (DE 189–18 at 26:24–27:4). As noted previously, Kerr is not an engineer and is not qualified to opine as to this alleged, and as yet, unidentified electrical failure.

7

produced no admissible evidence in support of their theory on the defect. As a lay witness with respect to vehicle product defects, Dennis Kerr is entitled to testify as to his expertise of burn patterns and cause of fire, however his testimony on his opinion of how the alleged defective part malfunctioned is inadmissible as lay opinion testimony not "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701(c) advisory committee's notes. Plaintiffs offer no evidence, aside from Dennis Kerr's expertise as a fire cause and origin expert as to the cause or origin of the fire. *See Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton*, 57 F.3d 1190, 1193, 1201-02, 1204 (3d Cir. 1995) (reversing a district court's allowance of lay testimony on a metal defect in a hydraulic cylinder where the witness lacked any formal education in material failures or metal fatigue). And even that testimony reveals that the cause is undetermined. There is simply no evidence in this record to prove Plaintiffs' theory of the defect.

### B. Plaintiff's Cannot Rely on the *Cassisi* Inference

Plaintiffs have failed to meet their burden of proof in strict product liability and negligence as they have failed to pinpoint a defect inside the subject vehicle at the time of the accident. However, as an alternative argument, Plaintiffs have attempted to apply the *Cassisi* inference,[10] suggesting that the defect and cause may be inferred from evidence that the product malfunctioned during normal operation. *See Cassisi*, 396 So. 2d at 1140. Plaintiffs are incorrect in their analysis as to application of the *Cassisi* inference, as well as in suggesting that the burden of proof rests with the Defendants when applying this inference. To the contrary, Plaintiffs are not in a proper position to apply this inference and, in addition, it does not shift the burdens of proof or of producing evidence. *See, e.g., Diversified Products Corp. v. Faxon*, 514 So. 2d 1161 (Fla. 1st DCA 1987); *Cassisi*, 396 So. 2d at 1140.

---

[10] *See* Cassisi, 396 So. 2d at 1140 (suggesting that the defect and cause may be inferred from evidence that the product malfunctioned during normal operation).

8

Under the *Cassisi* inference, "evidence of the nature of an accident itself may, under certain circumstances, give rise to a reasonable inference that the product was defective because the circumstances of the product's failure may be such as to frustrate the ordinary consumer's expectations of its continued performance." *Id.* at 1146. The question before this Court is whether the absence of any physical evidence in support of Plaintiffs' allegations—regarding the product's malfunction during normal operating conditions, the Plaintiffs have established a permissible case for jury consideration.

### 1. Burden of Proof

Section 402A of the Restatement of Torts (Second), adopted in Florida by *West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80 (1976), places the burden on the plaintiff to establish that his injuries were caused by a product which was in a defective state at the time it left the seller's hands. A plaintiff may establish a viable case by either direct or circumstantial evidence, with the circumstantial evidence usually being in the form of expert testimony that the product was defective. *Cassisi*, 396 So. 2d at 1147; *see, e.g., Elmore v. American Motors Corp.*, 70 Cal.2d 578, 75 Cal. Rptr. 652, 451 P.2d 84 (1969); *Bollmeier v. Ford Motor Co.*, 130 Ill.App.2d 844, 265 N.E.2d 212 (1970) (allowing the opinion of an expert given through answering a hypothetical question based on his knowledge of similarly designed steering systems in vehicles, even though he had not examined the steering system in question).

However, difficulties arise when a party shows that there are several possible explanations for the accident, not all pointing to the product's defective condition. Generally in these instances, "since the plaintiff's burden is to establish the presence of a defect at the time of the product's manufacture, his burden is not met—even though he presents evidence of the product's defective condition at the time of injury—without direct or circumstantial evidence showing the product was then defective." *Cassisi*, 396 So. 2d at 1147; *see Thompson v. Trane*

9

*Co.*, 500 P.2d 1329 (Okla. 1972); *State Stove Manufacturing Co. v. Hodges*, 189 So.2d 113 (Miss. 1966); *St. Paul Mercury Insurance Co. v. Jeep Corp.*, 175 Mont. 69, 572 P.2d 204 (1977); *Weatherford v. H.K. Porter, Inc.*, 560 S.W.2d 31 (Mo. App. 1977). Ultimately, this places the burden on the plaintiff for both producing evidence as well as persuasion as to that issue. *Cassisi*, 396 So. 2d at 1147.

### 2. Evidence of a Malfunction

In *Cassisi v. Maytag Co.*, the appellees argued that the "appellants failed to establish a causal connection between their injuries and the alleged defect because they were unable to negate all alternative causes of the fire other than a defect within the dryer."[11] *Id.* The *Cassisi* court relied on analysis from *Jakubowski v. Minnesota Mining and Manufacturing*, in determining that an inference as to a dangerous condition was available to the plaintiffs. 199 A.2d 826, 829–30 (N.J. 1964). The court in *Cassisi* noted that when the plaintiff is unable to prove a defect through either direct or circumstantial evidence, a legal inference may be applied finding the product as defective both at the time of the injury and at the time it was within the control of the supplier through consideration of the accident itself. *Id.* at 1148 (referring to the holding in *Greco v. Bucciconi Engineering Co.*, 283 F. Supp. 978 (W.D. Pa. 1967).

Specifically, the rule applied by the court stated that "when a product malfunctions during normal operation, a legal inference, which is in effect a mirror reflection of the Restatement's standard of product defectiveness, arises, and the injured plaintiff thereby establishes a *prima facie* case for jury consideration." *Id.* The court noted that the inference was most visible in cases where the product in question was so badly damaged by a malfunction that it makes it impossible for the plaintiff to point to the exact condition that caused the accident with specificity. *Id.* at 1149. This is not the case here. Even though the damage sustained to the vehicle was significant,

---

[11] "Elimination of alternative causes is a generally accepted type of proof for establishing a product defect. Other types of proof[] include the nature of the product, the pattern of the accident, the life history of the product, evidence of similar products and uses, and the happening of the accident." *Cassisi*, 396 So.2d at n14 (*noting* Rheingold, *Proof of Defect in Product Liability Cases*, 38 TENN. L.REV. 325, 327-39 (1971)).

investigators of the fire determined that the cause at that time was undetermined but could have been concluded through additional investigation, which was not done.

### a. Proximate Cause

In *Liberty Mutual Insurance Co. v. Sears, Roebuck & Co.*, an apartment fire was determined to be caused directly by a television set in the apartment. 406 A.2d 1254 (Conn. Sup. Ct. 1979). The owners of the allegedly defective television set testified to normal use of the product during the six months they owned it and the local fire department chief determined that the television set was in fact the cause of the fire. *Id.* Even though the plaintiffs did not identify a specific defect, the court found that with the cause of the fire determined by the fire chief to be the television, this was sufficient to indicate a malfunction that would not happen during normal use and thus inferred a defect in the product. *Id.* at 1257. Here, the investigators concluded that the cause of the fire was undetermined. Without establishing that the Expedition was even the cause of the fire, Plaintiffs have failed in their burden of proof of a malfunction during normal use. That Plaintiffs' own expert admits to not being able to rule out other causes of the fire (DE 189-18 at 122:14–21) is similarly fatal to the Plaintiffs' attempted invocation of the *Cassisi* inference. *See Cassisi*, 396 So. 2d at 1140.

### b. Circumstances Surrounding the Accident Itself

The Plaintiffs have relied on *McCann v. Atlas Supply Co.*, where a defect was found without the aid of additional testimony aside from that of the user.[12] 325 F. Supp. 701 (W.D. Pa. 1971). In that case, the plaintiffs were driving their vehicle when they heard a hissing sound like air was escaping from the tire. *Id.* The plaintiff testified to driving at normal speeds when both his vehicle and attached trailer overturned and were destroyed by an ensuing fire. *Id.* As a result of the vehicle wreck and fire, the allegedly defective tire was destroyed and the plaintiff relied solely on the circumstances surrounding the accident itself in order to meet their burden of proof

---

[12] Generally, the user's testimony of the accident is acceptable as a method of evidence sufficient to establish proof of a defect in the product. *See* Stewart v. Budget Rent-A-Car Corporation, 470 P.2d 240 (Haw. Sup. Ct. 1970).

11

of the defect. The Plaintiffs in the case before this Court have specifically relied on this analysis because the plaintiff in *McCann* did not have to exclude every possible cause of the accident, as the defendants had suggested that the cause could have come from damage sustained by striking objects while driving. *Id.* at 703. Rather, the court in *McCann* held that the occurrence of the malfunction was circumstantial evidence of the defect and was sufficient to meet the plaintiff's burden of proof. *Id.* This case is inapplicable to the facts before this Court because even though the Plaintiffs and their neighbor have offered testimony regarding the events and damage sustained, the testimony offered is not sufficient proof that the fire started in the vehicle and is thus the cause of the fire and damage.

### c. Proof of Defect

In general with regard to the application behind the *Cassisi* inference, as the court in *MacDougall v. Ford Motor Co.* held, "[p]roof of [a] specific defect in construction or design causing a mechanical malfunction is not an essential element . . ." and once the allegedly defective product is proven to have malfunctioned, "it obviously lacks fitness regardless of the cause of the malfunction." 257 A.2d 676, 679 (Penn. Sup. Ct. 1969). Cases applying this inference frequently involve evidentiary support in the form of expert inspection of the product and proof of its malfunction, coupled with the evidence that the product was used in a normal way. *Cassisi*, 396 So.2d 1151; *see, e.g., Winters v. Sears, Roebuck & Co.*, 554 S.W. 2d 565 (2d Mo. App. 1977); *Knight v. Otis Elevator Co.*, 596 F.2d 84 (3d Cir. 1979); *Farmer v. International Harvester Company*, 97 Idaho 742, 553 P.2d 1306 (1976). For a plaintiff to effectively utilize this type of inference, there must be sufficient facts pled to show proof of a malfunction that occurred during normal operation of the product. *Cassisi*, 396 So.2d 1151. The Plaintiffs in this case have failed to meet this burden and thus may not rely on the *Cassisi* inference.

## V. CONCLUSION

The Court finds that after consideration of the admissible evidence on the record that Plaintiffs have failed to satisfy their burden of proof on the existence of a defect and Defendant is therefore entitled to summary judgment on all remaining claims in this action.

Accordingly, upon a careful review of the record and for the foregoing reasons, it is hereby **ORDERED, ADJUDGED** and **DECREED** that:

1. Defendant Ford Motor Company's Amended Motion for Final Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment **(DE 190)** be, and the same is, hereby **GRANTED,** and the case is **DISMISSED WITH PREJUDICE,** with jurisdiction retained for determination of fees and costs, if any.

2. All pending motions are **DENIED as moot** and the Clerk shall **CLOSE** the case.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 1st day of May, 2014.

*[signature]*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc: All counsel of record.